IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CONINA WEST,** | Case 1:14 CV 672 |
| Plaintiff, | Judge James Gwin |
| v. | Magistrate Judge James R. Knepp, II |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | REPORT AND RECOMENDATION |

### INTRODUCTION

Plaintiff Conina West filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. § 405(g). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b) (1). (Non-document entry dated March 27, 2014). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

### PROCEDURAL BACKGROUND

Plaintiff filed for SSI on September 20, 2012, alleging an onset date of October 1, 1993. (Tr. 138). Plaintiff applied for benefits due to depression, schizophrenia, trauma, and anxiety. (Tr. 163). Her claim was denied initially November 9, 2012 (Tr. 90) and upon reconsideration on January 24, 2013 (Tr. 100). Plaintiff requested a hearing before an administrative law judge ("ALJ") on March 11, 2013. (Tr. 105). Plaintiff, represented by counsel, and a vocational expert ("VE") testified at a hearing before the ALJ on October 13, 2013. (Tr. 23). The ALJ denied Plaintiff's claim for SSI benefits on November 5, 2013. (Tr. 11). The Appeals Council denied

Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981. Plaintiff filed the instant action on March 27, 2014. (Doc. 1).

**FACTUAL BACKGROUND**

*Personal Background and Testimony*

Born October 2, 1969, Plaintiff was 42 years old at the time of her application. (Tr. 17). Plaintiff had completed the 11th grade (Tr. 30) and had not worked in "about fifteen years" at the time of hearing. (Tr. 32). Plaintiff testified that she got along well with her son and mother, with whom she lived at the time, but she was trying to move out of her mother's house to her own apartment. (Tr. 38). Plaintiff testified she was able to go shopping and could interact with store clerks. (Tr. 39-40). She could perform some household tasks like cleaning. (Tr. 40). Plaintiff did not need reminders to take her medication. (Tr. 40). She liked to cook and was able to follow recipes, even new ones, with good results. (Tr. 40-41). Plaintiff attended church when able but her medical conditions made it hard to attend. (Tr. 41-42).

Plaintiff testified she had back problems, tendonitis in her feet, heart murmur, asthma, and trouble concentrating. (Tr. 32). She testified her mental problems arose from prior trauma, notably rape and molestation, but medication improved her symptoms. (Tr. 43-44). Plaintiff testified she drank occasionally and never had a drug problem. (Tr. 33-34). She admitted to use of marijuana in the past but denied use of cocaine or heroin. (Tr. 34). Plaintiff later admitted she used crack cocaine as recently as 2005, to be sociable or to self-treat anxiety. (Tr. 34-35).

*Relevant Medical Evidence*

In August 2012, Plaintiff was referred by Northeast Ohio Neighborhood Health Services ("NEON") for evaluation and management of depression. (Tr. 189). On September 20, 2012,

Plaintiff was seen by Robert Carson, Ph.D., where she presented with anxiety, depression, and schizophrenia. (Tr. 192). At this evaluation, Plaintiff claimed she often fought with her mother but did have a support network of friends. (Tr. 192). She also stated she was sexually active with one partner. (Tr. 193). She said she exercised between five and ten hours a week and her hobbies included rollerblading/skating, dancing, and video games. (Tr. 193). She admitted to drinking about a six pack of beer a day and previously engaging in illicit drug use. (Tr. 193). Dr. Carson noted the following:

> Problems with appetite. Sleeping problems exist. Patient's appearance is disheveled. Patient is oriented to person, place, time, situation. Behavior is described as agitated, regressive. Psychomotor behaviors are hyperactive, internally stimulated. Speech is pressured, slurred. Patient's affect is labile. Patient's mood is labile, anxious, and irritable. Memory is intact. Sensorium is clouded consciousness. Patient's intellect is average. Attitude is cooperative, hopeful, discouraged. Patient has poor concentration. Reasoning poor. Impulse control is very poor. Judgment is very poor. Insight is very poor. Patient's self-perception is abasing. Thought processes show perseveration. Patient has auditory, olfactory, visual hallucinations. Thought content reveals delusions, obsession. The patient expresses suicidal ideation in thoughts. The patient expresses homicidal ideation in thoughts.

(Tr. 194). Dr. Carson referred Plaintiff to a psychiatrist for evaluation. (Tr. 195).

On September 25, 2012, Plaintiff saw Michelle Romero, D.O., where she reported frequent crying, paranoia, command auditory hallucinations, and visual hallucinations of "the polka dot man." (Tr. 197). Plaintiff reported a support network of friends however she also noted her son was in rehab. (Tr. 199). Dr. Romero described Plaintiff as follows:

> The patient is exhibiting signs of psychosis. No signs of mania. Problems with appetite. Sleeping problems exist. Patient's appearance is disheveled. Patient is oriented to person, place, time and situation. Behavior is described as unremarkable. Psychomotor behaviors are unremarkable. Speech is appropriate. Patient's affect is flat. Patient's mood is depressed. Memory is intact. Sensorium is clear consciousness. Patient's intellect is below average. Attitude is cooperative, discouraged. Attention is distracted. Reasoning poor. Impulse control is fair. Judgment

3

> is fair. Insight is poor. Patient's self-perception is abasing. Thought processes are concrete. Patient has auditory, visual hallucinations. Thought content reveals paranoia. The patient does not express suicidal ideation. The patient does not express homicidal ideation. Patient is able to understand and agrees to refrain from harmful action.

(Tr. 200). Dr. Romero assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 55[1]. (Tr. 200). Dr. Romero prescribed Fluphenazine, Prolixin, and Doxepin; and recommended referral because Plaintiff required more intensive treatment than she could offer. (Tr. 200-01).

Plaintiff returned to Dr. Carson on October 11, 2012. (Tr. 204). Dr. Carson noted no significant changes in Plaintiff's mental status at this appointment. (Tr. 204-05). Dr. Carson saw Plaintiff again on October 18, 2012, where he reported she was verbal, cooperative, and in a good mood. (Tr. 215).

The next day, October 19, 2012, Drs. Romero and Carson filled out a Mental Status Questionnaire concerning Plaintiff. (Tr. 208). They reported Plaintiff had fair concentration, an intact memory, poor abstract reasoning, and below average intelligence. (Tr. 208). They also reported Plaintiff's paranoid tendencies and hallucinations could make social interaction and work difficult. (Tr. 209). Dr. Carson also filled out a Daily Activities Questionnaire where he noted Plaintiff got along well with her family but did not have many friends. (Tr. 211). He indicated she had fair personal hygiene, prepared her own food, and was able to pay bills; however her paranoia affected her going into public. (Tr. 212).

On October 23, 2012, Dr. Romero met with Plaintiff to review her medication but Plaintiff stated she had not yet started them because they were too expensive. (Tr. 217). Dr.

---

1. The GAF scale represents a "clinician's judgment" of an individual's symptom severity or level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32-33 (4th ed., Text Rev. 2000) (*DSM-IV-TR*). A GAF score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers and co-workers). *Id.* at 34.

4

Romero reduced the Doxepin dosage and prescribed Haloperidol, because it was cheaper. (Tr. 218). Plaintiff was again assigned a GAF score of 55. (Tr. 218).

Plaintiff met with Dr. Carson on November 7, 2012, and reported feeling depressed. (Tr. 221). Her mental status exam revealed no significant changes. (Tr. 221-22).

In July 2013, Plaintiff saw Maria Obias, CNS, and reported anxiety and depression. (Tr. 253). Plaintiff again said she was experiencing hallucinations, mood swings, and paranoia (Tr. 258); and that recently a friend had to intervene to prevent her from hurting herself and others. (Tr. 258). She also admitted to using amphetamines, marijuana, and to using cocaine as recently as the week before this appointment. (Tr. 258). Ms. Obias reported "[i]n spite of current symptoms, [patient] is functional- cares for self, helps mother with house work, walks/exercises "somewhat". (Tr. 254). Ms. Obias noted Plaintiff was not adhering to her medication (Tr. 253). Ms. Obias continued Doxepin, started a prescription for Haldol and Cogentin, and assessed Plaintiff with a GAF score of $35^2$. (Tr. 254, 262).

At her next visit, on August 14, 2013, Plaintiff complained her symptoms persisted. (Tr. 256). Ms. Obias reported that Plaintiff had not taken her medication for the last twenty days and continued her current treatment course. (Tr. 256-57).

On September 19, 2013, Plaintiff reported "voices told me to hurt myself" but she did not attempt to do so. (Tr. 267). Ms. Obias noted poor concentration, short attention span, poor eye contact, and restlessness during the visit. (Tr. 267). Ms. Obias also concluded Plaintiff was making some progress and was adherent to her medication. (Tr. 268).

---

2. A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing in school). *Id.* at 34.

On that same day, Ms. Obias filled out a Medical Assessment of Ability to do Work-Related Activities (Mental) at Plaintiff's request. (Tr. 249). Ms. Obias reported Plaintiff would be fair to good at making occupational adjustments in a majority of categories; but she also noted deficiencies in relating to co-workers and dealing with stress. (Tr. 249). Ms. Obias said Plaintiff would be poor at making performance adjustments, especially with complex or detailed job instructions but Plaintiff would be good to fair in all social adjustments. (Tr. 250). Ms. Obias concluded due to Plaintiff's conditions she could not work. (Tr. 250).

*State Agency Examiners*

In November 2012, state agency psychiatric consultant, Todd Finnerty, Psy.D., reviewed Plaintiff's medical records. (Tr. 64-70). He found Plaintiff had only moderate restrictions in daily living, social functioning, and maintaining concentration, persistence, or pace. (Tr. 66). Dr. Finnerty placed great weight on the opinion of Dr. Romero and stated her opinion was reasonable based on the objective findings. (Tr. 67). However, Dr. Finnerty opined that Plaintiff was "not significantly limited" in memory, could remember "short and simple instructions without demands for fast pace", and would be capable of superficial interaction with others. (Tr. 68-69).

On January 24, 2013, Irma Johnston, Psy.D., reviewed Plaintiff's medical file. She also placed great weight on the opinion of Dr. Romero. (Tr. 79). However, she came to the same conclusions as Dr. Finnerty in regards to Plaintiff's ability to work. (Tr. 79-81).

*ALJ Decision*

In November 2013, the ALJ found Plaintiff had the severe impairments of schizophrenia, affective disorder, anxiety, and alcohol addiction; but these severe impairments did not meet or medically equal any listed impairment. (Tr. 13-14). The ALJ then found Plaintiff had the residual

functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations: she could only perform simple, routine tasks in a setting with no fast pace and only occasional changes; and could only occasionally interact with supervisors, coworkers, and the public, if the interaction is limited to speaking and signaling. (Tr. 15-17).

Based on the VE testimony, the ALJ found Plaintiff could perform work as a laundry laborer, kitchen helper, or house keeper; and thus was not disabled. (Tr. 18).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for SSI is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

**DISCUSSION**

Plaintiff argues the ALJ erred because (1) he did not have substantial evidence of Plaintiff's ability to work on a sustained basis; and (2) he failed to give proper consideration to the opinion of Maria Obias, CNS. (Doc. 15, at 1). The Court will address Plaintiff's second issue first, and then proceed to an analysis of the first issue.

*"Other Source" Opinion*

In her second assignment of error, Plaintiff alleges the ALJ failed to give proper consideration to the "other source" evidence provided by Maria Obias, CNS. (Doc. 15, at 1). As a Clinical Nurse Specialist, Ms. Obias is classified as an "other source" under the regulations. 20 C.F.R. § 404.1513(d)(1).

The regulations provide specific criteria for evaluating medical opinions from "acceptable medical sources"; however, they do not explicitly address how to consider opinions and evidence from "other sources", including "non-medical sources" listed in §§ 404.1513(d) and 416.913(d). SSR 06-3p clarifies opinions from other sources "are important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-3p, 2006 WL 2329939, at *3 (Aug. 9, 2006). SSR 06-3p also states other sources should be evaluated under the factors applicable to opinions from "acceptable medical sources" – i.e., how long the source has known and how frequently the source has seen the individual; consistency with the record evidence; specialty or area of expertise; how well the source explains the opinion; supportability; and any other factors that tend to support or refute the opinion. SSR 06-3p; 20 C.F.R. § 404.1527(d)(2).

In the Sixth Circuit, "an ALJ has discretion to determine the proper weight to accord opinions from 'other sources'". *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007).

While the ALJ "does not have a heightened duty of articulation when addressing opinions issued by 'other sources', the ALJ must nevertheless "consider" those opinions. *Hatley v. Comm'r of Soc. Sec.*, 2014 WL 3670078 (N.D. Ohio); *see also Brewer v. Astrue*, 2012 WL 262632, at *10 (N.D. Ohio 2012) ("SSR 06-3p does not include an express requirement for a certain level of analysis that must be included in the decision of the ALJ regarding the weight or credibility of opinion evidence from 'other sources.'").

On September 19, 2013, Ms. Obias opined Plaintiff would be fair to good at making occupational adjustments in a majority of categories; but she also noted deficiencies in relating to co-workers and dealing with stress. (Tr. 249). She stated Plaintiff would be poor at making performance adjustments, especially with complex or detailed job instructions. (Tr. 250). And she reported Plaintiff would be good to fair in all social adjustments, however she stated that due to Plaintiff's conditions she could not work. (Tr. 250).

The ALJ considered Ms. Obias' report and concluded she was not an acceptable medical source. (Tr. 16). Contrary to Plaintiff's argument, the ALJ was not required to provide a "meaningful explanation" (Doc. 15, at 22) regarding his opinion of Ms. Obias' evidence. *See e.g., Hatley,* 2014 WL 3670078; *Brewer v. Astrue*, 2012 WL 262632, at *10. However, the ALJ provided the opinion was "less persuasive because treatment notes contain few exam findings to support it." (Tr. 17). Ms. Obias had seen Plaintiff only three times when she rendered her opinion (Tr. 253-54, 256-57, 267-68); an opinion the ALJ determined was insupportable and not fully explained (Tr. 17). Even so, the ALJ's RFC determination was consistent with Ms. Obias' opinion, in that it restricted Plaintiff to simple tasks and superficial interaction with others.

Plaintiff cannot receive relief based solely on her subjective disagreement with the weight given to her "other source" opinion when the ALJ identified factors that discredited the opinion.

10

*See Mullins v. Sec'y of Health & Human Servs.,* 836 F.2d 980, 984 (6th Cir. 1987) ("[c]lamaint's argument rests solely on the weight to be given opposing medical opinions, which is clearly not a basis for our setting aside the ALJ's factual findings"). The ALJ appropriately considered the "other source" opinion, and did not err by refusing to accept it as the basis for his RFC determination.

*Treating Physician Rule*

Next, Plaintiff argues the ALJ erred in only giving "considerable weight" to the joint opinion of Drs. Romero and Carson instead of the controlling weight a treating physician should receive. (Tr. 16; Doc. 15, at 17-18). Under the regulations, a "treating source" includes physicians, psychologists, or "other acceptable medical source[s]" who provide, or have provided, medical treatment or evaluation and who have, or have had, an ongoing treatment relationship with the claimant. 20 C.F.R. § 416.902. An ongoing treatment relationship will exist when "medical evidence establishes that [claimant] see[s], or ha[s] seen, the source with a frequency consistent with accepted medical practice". § 404.1502.

Generally, the medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)). A treating physician's opinion is given "controlling weight" if it is supported by (1) medically acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent

11

with other substantial evidence in the case record. *Id*. (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). If the physician's medical opinion is not granted deference than the ALJ must give "good reasons" for the weight given to the opinion. *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)). "Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *4).

Thus, for Drs. Romero and Carson's opinion to be given controlling weight it must have been given after an ongoing treatment relationship had been established. *See Rogers,* 486 F.3d at 242; § 404.1502. At the time the opinion was completed, October 19, 2012, Dr. Carson had seen Plaintiff three times and Dr. Romero had only seen Plaintiff one time, all within less than a month of her first coming to NEON. This is not sufficient to create a "longitudinal picture of [Plaintiff's] medical impairments". *Rogers*, 486 F.3d at 242. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003) ("[T]he assumption that the opinion of a treating physician warrant greater credit than the opinions of [others] may make scant sense when, for example, the relationship between the claimant and the treating physician has been of short duration."); *Helm v Comm'r of Soc. Sec.,* 405 F. App'x 997, 1000 n.3 (6th Cir. 2011) ("[I]t is questionable whether a physician who examines a patient only three times over a four-month period is a treating source – as opposed to a non-treating (but examining) source."); *Yamin v. Comm'r of Soc. Sec.,* 67 F. App'x 883, 885 (6th Cir. 2003) ("These two examinations did not give Dr. Meerschaert a long term overview of Yamin's condition."). The treating physician rule is intended to grant deference to those medical sources who have a detailed and complete picture of the Plaintiff's medical history; that rationale does not apply here.

Instead, Drs. Romero and Carson are non-treating sources. Non-treating sources are physicians, psychologists, or other acceptable medical sources who have examined the claimant but do not have, or did not have, an ongoing treatment relationship with them. 20 C.F.R. § 416.902. "If the ALJ does not accord the opinion of the [source] controlling weight, it must apply certain factors" to assign weight to the opinion. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id.*

Here, the ALJ applied the appropriate factors, as laid out in *Rabbers*, for determining the weight to give to a medical opinion. 582 F.3d at 660. Particularly relevant was the opinion was rendered so early in the treatment relationship and there was no evidence Plaintiff had complied with the treatment recommendations. (Tr. 16). Additionally, the ALJ found the GAF score – 55 – assigned by Dr. Romero, was inconsistent with the work restrictions she noted in the October 19, 2012 report. (Tr. 16). *See Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 877 (6th Cir. 2007) ("a GAF score of 50 is consistent with the ability to work").

Because of the short term relationship, limited extent of treatment, and inconsistent conclusions, the ALJ gave specific "good reasons" not to afford the October 19, 2012 report controlling weight. *See Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (noting the "good reasons" rule does not require an "exhaustive factor-by-factor analysis").

Even so, the ALJ did determine Drs. Romero and Carson's opinion had "considerable weight" and was overall "broadly consistent with their findings." (Tr. 16). Thus, the ALJ was

proper in finding Drs. Romero and Carson were not treating physicians, outlining specific "good reasons", and appropriately weighing their opinion therefrom.

*Substantial Evidence*

As a whole, Plaintiff argues the evidence does not support the ALJ's determination that she is capable of performing work on a sustained basis. (Doc. 15). The Court construes this as a challenge to the RFC determination made by the ALJ.

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. § 416.929. An ALJ must also consider and weigh medical opinions. § 416.927. When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on a consideration of the entire record. SSR 96-7p, 1996 WL 374186, *1.

Here, the ALJ determined Plaintiff had the RFC to complete a full range of work at all exertional levels, but with non-exertional limitations such that she was limited to simple routine tasks in a setting with no fast pace and only occasional changes; and only occasional interaction with supervisors, coworkers, and the public if that interaction is limited to speaking and signaling. (Tr. 15).

In making this determination, the ALJ considered the evidence of record, including state agency psychologist Dr. Johnston's opinion. (Tr. 16). The ALJ gave "great weight" to Dr. Johnston's opinion that Plaintiff's abilities were moderately impaired but she was capable of performing simple tasks with superficial personal interactions. This opinion is consistent with Plaintiff's testimony and documentary evidence which shows Plaintiff is capable of cooking,

remembering her medication, playing video games, and interacting with family and friends. (Tr. 39-41). The ALJ did not commit error in relying on the opinion of Dr. Johnston in making his RFC determination because it was supported by substantial record evidence.

The extent the RFC differs from the opinions of Drs. Romero, Carson, and Ms. Obias is irrelevant because the ALJ is not required to adopt any physician's opinion verbatim. 20 C.F.R. § 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."); SSR 96-5p, 1996 WL 374183, at *5 ("Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the [RFC] assessment."). Rather, the ALJ need only provide good reasons for the weight assigned and support his decision with substantial evidence.

Here, the ALJ did just that. He provided good reasons for the "considerable weight" afforded Drs. Romero and Carson. Mainly that, while their opinion was broadly consistent with the record, it did not support the restrictive limitations on Plaintiff's work abilities, specifically citing the GAF score of 55. Furthermore, while the ALJ did not assign weight to Ms. Obias' opinion, the restrictions he included in the RFC were reflective of those included within her opinion. The only restriction that the ALJ did not adopt was the determination that Plaintiff was disabled, which is within his discretion. *See Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984) (stating that the issue of disability is one reserved for the Commissioner, not a physician); SSR 96-5p, 1996 WL 374183.

Furthermore, it is proper for the ALJ to assess and balance medical and non-medical evidence when making an RFC determination. *Poe*, 342 F. App'x at 157. Taking into account the above medical opinions and combining those with other evidence of record, such as Plaintiff's

15

testimony about her daily living activities and Dr. Johnston's opinion, the ALJ made a determination that Plaintiff was capable of simple work tasks. In short, the RFC was consistent with the objective medical findings and supported by substantial evidence.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI benefits is supported by substantial evidence, and therefore recommends the Commissioner's decision be affirmed.

 s/James R. Knepp II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).